IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No.: 2:06-cr-89-WKW-CSC |
| ) | |
| FREEMAN STEVENSON, JR. ) | |

**MOTION TO SUPPRESS STOP, SEARCH AND SEIZURE**

**COMES NOW**, the Defendant, Freeman Stevenson, Jr., by and through undersigned counsel, Anne E. Borelli and, pursuant to the Fourth and Fifth Amendments to the United States Constitution, moves this Court for an Order suppressing all evidence and statements illegally seized as a result of the stop, search and seizure of the vehicle driven by Mr. Stevenson on September 15, 2005, including: (a) any and all physical evidence seized from the vehicle or Mr. Stevenson, (b) any and all statements made as a result of the illegal stop, search and seizure of the vehicle, and (c) any other "fruit" of the illegal stop, search and seizure.

**Facts**

1.Freeman Stevenson, Jr., is a 42-year-old African-American male.

2.On September 15, 2005, he was driving a tan Ford F150 pickup with spinner rims and a bed cover, headed west in the 800 block of West Jeff Davis Avenue in Montgomery, Alabama.

3.At the time of the stop, he had one African-American male passenger.

4. Mr. Stevenson was operating his vehicle safely and within posted speed limits.

5. Nevertheless, at approximately, 7:00 p.m., Mr. Stevenson's vehicle was stopped by Montgomery Police Officers L. R. Gambrel and C. L. Herbert.

6. According to discovery provided to defense counsel, these officers will contend that they stopped Mr. Stevenson because approximately ten days earlier a similar vehicle was possibly used in or present at a local burglary; the officers will apparently concede that they did not stop Mr. Stevenson to effect an arrest on any outstanding warrants.

7. Witnesses to the burglary did not observe any of the furniture removed from the burglarized home being placed in the truck.

8. At the time of the stop, Mr. Stevenson was traveling in the direction opposite to the scene of the alleged burglary.

9. Mr. Stevenson's vehicle did not match at least one distinctive element of the description given by one of the two witnesses–a missing spinner from the front left, driver's side wheel.

10. The officers did not have a positive identification of anyone involved in the burglary, but had been told that one individual observed at the scene goes by the name of "Poncho."

11. According to the police incident report, Mr. Stevenson was asked immediately whether he has any nicknames and gave an incriminating response; no *Miranda* warnings had been given.

12. According to discovery received by defense counsel, the officers allege that, after Mr. Stevenson's vehicle was stopped, a warrant check returned an outstanding warrant for failure to pay child support.[1]

13. Mr. Stevenson was asked to step out of the vehicle and was forced to the ground.

14. A subsequent search of his person yielded a quantity of crack cocaine and marijuana.

15. The vehicle was impounded, and an inventory search revealed a firearm wedged under the back seat.

16. On information and belief, paramedics were called to the scene of the stop by the police.

17. On or about September 27, 2005, witnesses to the burglary positively identified Mr. Stevenson from a photo lineup.

18. Mr. Stevenson was subsequently charged in this Court with felony possession of the firearm found in the vehicle.

19. Mr. Stevenson has also been indicted in state court on charges of burglary and theft of property.

Mr. Stevenson moves to suppress the stop and subsequent search of the vehicle and all statements, physical evidence and information gained during and as a result of this arrest.

---

[1] Mr. Stevenson receives disability checks through Social Security. His children for whose support he is responsible receive separate Social Security checks based on their father's disability.

**Issues Presented**

1. The stop of the vehicle was improper because there was no probable cause to justify the stop.

2. The stop of the vehicle was improper because it was not supported by reasonable suspicion of criminal activity.

3. Statements taken without *Miranda* warnings were taken in violation of the Fifth Amendment.

4. Any statements taken or evidence collected were fruit of the poisonous tree.

**Argument**

**1. The stop of the vehicle was improper because there was no probable cause to justify the stop.**

The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 88 S.Ct. 507, 514 (1967) (internal citations omitted).

In this case, there was neither a warrant for Mr. Stevenson's arrest, nor probable cause to charge him with a crime. Thus, no probable cause justified the stop.

**2. The stop of the vehicle was improper because it was not supported by reasonable suspicion of criminal activity.**

4

"[L]aw enforcement agents may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity." *United States v. Hensley*, 469 U.S. 221, 226 (1985) (*citing United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). Reasonable suspicion to stop exists if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (citations omitted). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.*

In this case, the information available to the police officers did not provide a "reasonable suspicion" to believe that Mr. Stevenson was involved in criminal activity. Mr. Stevenson had not violated any traffic rules or laws. Mr. Stevenson had not been identified as a suspect in the burglary or any other crime. The officers were unaware of any outstanding warrants for Mr. Stevenson's arrest.

Nor was there sufficient basis for "reasonable suspicion" to believe that Mr. Stevenson's vehicle had been involved in criminal activity. The description was already ten days old and thus stale. The description was general and did not include any unique factors, such as a license tag number or damage to a specific area of the truck. Mr. Stevenson's vehicle differed from the description of the suspect vehicle because his truck was missing a wheel cover, and the description implied that there were no missing wheel covers.

In addition, no observations of the truck by the officers added to the basis for the "reasonable suspicion" – the truck was not driven erratically or engaged in suspicious activity. *Compare U.S. v. Hurst*, 228 F.3d 751, 756 - 757 (6th Cir. 2000) (off-duty officer observed vehicle matching reported description traveling away from vicinity of burglary at high speed, at a location consistent with the time needed to travel to that point from the burglarized residence); *U.S. v. Basey*, 816 F.2d 980, 988 (5th Cir. 1987) ("area residents had seen Basey's car aimlessly wandering back and forth on the little-traveled, rural roads earlier that day" and had taken down its tag number because of this suspicious activity); *United States v. Rickus*, 737 F.2d 360, 362, 364-66 (3d Cir.1984) (officers saw a car moving slowly at 3:30 a.m. through business district and into a nearby residential area where numerous nighttime burglaries had occurred); *U.S. v. Kimball*, 813 F.Supp. 95, *98 (D. Maine 1993) (officer observed vehicle known to be owned by a burglary suspect, in a deserted high school parking lot at midnight, at a time when a number of area schools had been burglarized at night).

In *United States v. Marxen*, 410 F.3d 326 (6th Cir. 2005), the Sixth Circuit reversed a district court's granting of a motion to suppress, finding that reasonable suspicion did support the warrantless stop of a vehicle eleven days after it was reported to be involved in an armed robbery. However, in that case, the known description of the suspect vehicle clearly matched Mr. Marxen's car, since it included the make, model and general color of the car **and** an identical or nearly identical license number. 410 F.3d at 331. Even though Mr.

6

Marxen did not match the description of the robbers, the Sixth Circuit found it significant that – unlike the present case – the suspect vehicle was clearly described as being intimately involved in the reported crime of violence: it was the getaway car for two armed robbers. 410 F.3d at 327.

>   The Sixth Circuit observed:

>> Until a crime such as an armed robbery is solved, the at-large robbers present a threat to the public safety. Although Marxen himself was not believed to be one of the robbers, the stop of his car could clearly lead to evidence that would permit the police to locate the robbers, and therefore protect the public from the threat the robbers posed. The law enforcement interests at stake were therefore still significant, and outweigh the individual's interest to be free of a stop.

410 F.3d at 331.

In the present case, however, there was no indication that the stop of this truck would "clearly lead to evidence that would permit the police to locate the [burglars]." Moreover, the threat posed to the public by the unsolved several days-old burglary was not significant enough to justify Mr. Stevenson's right to be free of a stop unsupported by sufficient cause.

>   **3.   Statements taken without *Miranda* warnings were taken in violation of the Fifth Amendment.**

>   In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held

that:

>> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or

>otherwise deprived of his freedom of action in any significant way. . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

384 U.S. at 444.

The *Miranda* requirements apply to all custodial interrogations where criminal prosecution could result. *Beckwith v. United States*, 425 U.S. 341, 347 (1976). In determining what constitutes "custody" for *Miranda* purposes, the Supreme Court has held that two separate inquiries are essential:

>[F]irst, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry": "[was] there a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (*per curiam*) (*quoting Oregon v. Mathiason*, 429 U.S. 492, at 495, 97 S.Ct., at 714).

*Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

"The character of a seizure as arrest or Terry stop depends on the nature and degree of intrusion, not on whether the officer pronounces the detainee 'under arrest.'" *United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1221 (11th Cir.1993) (citing *Dunaway*, 442 U.S. at 212, 99 S.Ct. at 2256). If the stop "ripens" into an arrest, "*Terry*'s reasonable articulable suspicion standard is supplanted by the probable cause requirement that attends the making of arrests, whether of the formal or de facto variety." *U.S. v. Dunn*, 345 F.3d 1285, 1290 (11th Cir.

2004).

"In determining whether a 'reasonable person would feel free to terminate the encounter,' courts consider several factors: 'whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police.'" *Miller v. Harget*, 2006 WL 2190555, *5 (11th Cir.2006), citing *U.S. v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006) and *United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir.1991).

According to police reports, Mr. Stevenson was stopped on suspicion of participation in a burglary, not for a routine traffic stop. Once the vehicle was stopped, Officer Gambrel wrote in his report, Mr. Stevenson was asked directly whether he has any nicknames. This question had no possible purpose other than to elicit an incriminatory response and tie Mr. Stevenson to the burglary. Mr. Stevenson had not been given *Miranda* warnings at this point, or at any point while at the scene of the stop.

In *U.S. v. Acosta*, 363 F.3d 1141 (11th Cir. 2004) the Eleventh Circuit discussed why *Miranda* rights need not be applied to a classic **traffic** stop:

> The Supreme Court recognized in *Berkemer*[2] . . . . two key factors which, in the context of a traffic stop, mitigate the pressures upon a detained person so that his ability to exercise his privilege against self incrimination is not so impaired that he need be warned of his

---

[2]*Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

> constitutional rights under Miranda. First, "detention of a motorist pursuant to a traffic stop is presumptively temporary and brief" . . . . The second factor associated with a traffic stop that the *Berkemer* Court recognized as reducing the pressure to respond to incriminating questions is that most traffic detainees would not "feel[ ] completely at the mercy of the police" . . . .

363 F.3d at 1149 - 1150.

In the present case, however, unlike a motorist in a traffic stop, Mr. Stevenson did not know the purpose of the stop, nor could he assume that the stop would necessarily be brief. Thus, he was "in custody" for *Miranda* purposes. Because the purpose of Officer Gambrel's questioning was to elicit an incriminating response, Mr. Stevenson was entitled to the protections of *Miranda*.

### 4. Any statements taken or evidence collected was fruit of the poisonous tree.

"As a general rule, the evidence gathered as a result of an unconstitutional stop must be suppressed." *U.S. v. Chanthasouxat*, 342 F.3d 1271, 1280 (11th Cir. 2003). Evidence collected as a result of improper police conduct are subject to suppression as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). Such statements and evidence, upon motion to suppress, are not admissible into evidence at trial. *Id.* "(I)n the absence of 'an act of free will [sufficient] to purge the primary taint of the unlawful invasion,' any statements . . . made and any evidence gathered as a result of the unconstitutional seizure must be suppressed." *U.S. v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003), citing *Kaupp v. Texas*, 538 U.S. 626, 123 S.Ct. 1843, 1847 (2003) and *Wong Sun v.*

*United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 416-17, 9 L.Ed.2d 441 (1963).

The seizure of the firearm and the statements made by Mr. Stevenson, and all other information were gathered by the police as a result of these events, without any intervening actions that "purge" the taint of this illegality. They are thus due to be suppressed. They were obtained as the direct result of the warrantless, illegal stop of Mr. Stevenson and/or the un-*Mirand*ized questioning that followed.

**WHEREFORE,** based on the foregoing, Mr. Stevenson respectfully asks that this Motion be granted.

                Respectfully submitted,

                s/ Anne E. Borelli
                ANNE E. BORELLI
                Counsel for Freeman Stevenson
                Federal Defenders
                201 Monroe Street, Suite 407
                Montgomery, Alabama 36104
                Phone: (334) 834-2099
                Fax: (334) 834-0353
                E-mail: anne_borelli_@fd.org
                AL Bar Code: BOR-016

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

>Chris Snyder, Esquire
>Assistant United States Attorney
>One Court Square, Suite 201
>Montgomery, Alabama 36104

>Respectfully submitted,
>s/ Anne E. Borelli
>ANNE E. BORELLI
>Counsel for Freeman Stevenson
>Federal Defenders
>201 Monroe Street, Suite 407
>Montgomery, Alabama 36104
>Phone: (334) 834-2099
>Fax: (334) 834-0353
>E-mail: anne_borelli@fd.org
>AL Bar Code: BOR-016