IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. NO.  2:06cr89-WKW |
| | ) | (WO) |
| FREEMAN STEVENSON, JR. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

The defendant, Freeman Stevenson, Jr. ("Stevenson"), was charged on April 5, 2006, in a single-count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  On August 14, 2006, Stevenson filed a motion, premised upon the Fourth Amendment to the United States Constitution, to suppress all items seized and statements obtained as a result of a police stop and search of the truck driven by him on September 15, 2005, on West Jeff Davis Avenue in Montgomery, Alabama, in the Middle District of Alabama.  (Doc. # 14 at 1).  Claiming that the stop, seizure and subsequent search of his vehicle were unsupported by probable cause or reasonable suspicion, Stevenson contends that all evidence seized and statements made should be suppressed as violative of the Fourth Amendment.  Stevenson also contends that he was interrogated without being advised of the *Miranda*[1] rights, and thus, any statements he made while in custody are due to be suppressed.

On September 18, 2006, the Court held an evidentiary hearing on the suppression motion.  For the reasons which follow, the Court concludes that the motion to suppress is due

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

to be denied.

## FACTS

The material facts are largely undisputed.  On September 5, 2005, Montgomery City police officers Lance Gambrel and Cedric Herbert responded to a burglary complaint at 678 West Jeff Davis Avenue.  The front door was kicked in and a substantial amount of property was taken from the house.  The officers interviewed the victim and two of the victim's neighbors.  Collectively, the witnesses described one suspect as being approximately forty years old, tall and thin, and with plaits in his hair.  The witnesses indicated that the individual was known on the street as "Poncho."  Both witnesses stated that Poncho drove a champagne-colored Ford F-150 pick-up truck with spinning rims and a hard cover over the cargo bed.[2]

Ten days later, on September 15, 2005, Gambrel and Herbert were patrolling West Jeff Davis Avenue when they noticed a champagne-colored Ford F-150 truck, with spinning rims and a hard top covering the bed traveling west on West Jeff Davis Avenue.  When the truck passed the police officers, Gambrel had a clear view of the driver through the open driver's side window and recognized that he matched the description of the suspect in the burglary.  Relying on his knowledge of the description of the truck used during the burglary and the description of one of the suspects, Gambrel initiated a traffic stop, approached the

---

[2] Gambrel testified that this was a fairly detailed and unique description of a vehicle.  Officer Herbert testified that he remembered the spinning rims because the rims were particularly expensive for the neighborhood.

driver and asked him his name which Stevenson gave.  Gambrel then asked Stevenson "how he was known on the street."  Stevenson responded that he "goes by Poncho."

Gambrel ran a warrant check on Stevenson which returned an outstanding warrant for failure to pay child support.  At that point, Gambrel removed Stevenson from the truck and placed him under arrest.[3]  Because Gambrel arrested Stevenson, he impounded the truck.  He and Herbert conducted an impound search which uncovered a handgun in the back seat of the cab of the truck.  The officers also found cocaine and marijuana on Stevenson.

## DISCUSSION

The Fourth Amendment protects individuals from "unreasonable searches and seizures" by government officials, and its protections extend to "brief investigatory stops of persons or vehicles."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).  Absent probable cause,[4] law enforcement officials may briefly detain a person as part of an investigatory stop if they have a reasonable, articulable suspicion based on objective facts that the person has engaged in criminal activity.  *Terry v. Ohio*, 392 U.S. 1 (1968).  *See also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993).  For brief investigatory stops, the Fourth Amendment is satisfied if the police officer has a "reasonable suspicion" to believe that criminal activity "may be afoot."  *Id*. (citing *Terry,* 392 U.S. at 20).  *See also United*

---

[3]  Although there was testimony regarding an altercation between Gambrel and Stevenson after he was arrested, it is undisputed that the altercation occurred after Stevenson was placed under arrest.  Consequently, any facts regarding the altercation are immaterial to resolution of the motion to suppress.

[4]  The United States concedes that the officers did not have probable cause to stop Stevenson.  (*United States' Resp. to Def's Mot. to Suppress*, Doc. # 31, at 3 n.5).

*States v. Gordon*, 231 F.3d 750, 754 (11th Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). When determining whether reasonable suspicion exists, courts must consider the totality of the circumstances to determine whether the police officer had a "particularized and objective basis" for suspected legal wrongdoing. *Arvizu*, 534 U.S. at 273 (citation omitted). In so doing, "the reviewing court must give due weight to the police officer's experience." *United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). The reasonable suspicion required for a *Terry* stop is more than a hunch, and considering the totality of the circumstances, must be supported by some minimal level of objective justification that the person engaged in unlawful conduct. *United States v. Sokolow*, 490 U.S. 1, 7-8 (1989)*; Diaz-Lizaraza,* 981 F.2d at 1221.

Officer Gambrel initiated the traffic stop based solely on his observation that the truck and driver matched the descriptions given to him by two witnesses to earlier burglary. In fact, Gambrel testified that the truck was a "dead match" and he was "amazed" at the accuracy of the description.[5] This information was sufficient to give rise to a reasonable suspicion that the driver of the vehicle may have engaged in criminal activity. Based on the objective facts, the court concludes that the initial stop of the vehicle was not in violation of the Fourth Amendment.

Thereafter, reasonable suspicion developed into probable cause when a warrant check revealed an outstanding felony warrant for Stevenson. Consequently, the court finds that the

---

[5] The fact that the truck was described as beige, tan or champagne colored does not diminish the accuracy of the description provided to and relied upon by Gambrel.

defendant's rights secured by the Fourth Amendment were not violated.

Once Gambrel stopped the vehicle, it was reasonable for him to determine the defendant's identity. *See generally Hibbel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177 (2004).

> Asking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. "[I]nterrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure." *INS v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

*Id*. at 185. Of course, Stevenson was under no obligation to respond to Gambrel's questioning. "Mere questioning . . . is neither a search nor a seizure." *United States v. Purcell*, 236 F.3d 1274, 1279 (11th Cir. 2001).

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. . . . Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means.

*United States v. Drayton*, 536 U.S. 194, 201-02 (2002). *See also, United States v. Baker,* 290 F.3d 1276 (11th Cir. 2002). The law is "well established that an officer may ask a suspect to identify himself during the course of a *Terry* stop." *Hibbel*, 542 U.S. at 186. *See also Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) ("Typically, . . . the officer may ask the detainee [of a traffic stop] a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee

5

is not obligated to respond.")  The fact that Stevenson was not told of the reason for the stop before he responded to Gambrel's question about his street name does not alter the fundamental nature of the encounter.  "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response."  *Drayton*, *quoting  Delgado*, 466 U.S. at 216.[6]

To the extent that Stevenson argues that Gambrel should not have asked him his street name during the traffic stop because he was "in custody" and had not been given *Miranda* warnings,[7] this argument borders on the ridiculous.  While it is correct that the police can be said to have seized an individual if, in view of all the surrounding circumstances, a reasonable person would believe that he was not free to leave, *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988), a *Terry* investigatory stop is not an arrest merely because a reasonable person would not feel free to leave.  *United States  v. Blackman*, 66 F.3d 1572, 1576 (11th Cir. 1995).  If every seizure were an arrest, as the defendant seems to argue, *Terry* would be rendered meaningless.

The "Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during 'custodial interrogation' without a prior warning."

---

[6]  In *United States v.  Baker*, 290 F.3d 1276 (11th Cir. 2002), the court relying upon *Terry v. Ohio*, 392 U.S. 1 (1968), and *Florida v.  Bostick*, 501 U.S. 429 (1991) held that the crucial test is whether under the circumstances the police conduct would communicate to a reasonable person that he was not at liberty to ignore the officer and go about his business.  Stevenson presented no evidence that his liberty was restrained.

[7]  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

6

*Illinois v. Perkins*, 496 U.S. 292, 296 (1990).  The Supreme Court has specifically rejected the defendant's argument that Gambrel's stop of his truck "rendered him 'in custody'" for the purpose of *Miranda*.  *See Berkemer*, 468 U.S. at 441 (Officer not required to give *Miranda* warnings to a motorist until the motorist was placed under arrest.)  It is undisputed that Stevenson was not in custody when he responded to Gambrel's question about his street name.[8]  Consequently, his Fifth Amendment claim lacks merits.

## CONCLUSION

Accordingly, for the reasons stated, it is the RECOMMENDATION of the Magistrate Judge that the defendant's motion to suppress be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **October 2, 2006.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District

---

[8]  The defendant argues that Gambrel asked Stevenson for his street name with the intent of eliciting an incriminatory answer.  The officer's subjective intent is not dispositive.  The Supreme Court has said, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.  Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  *Whren v. United States*, 517 U.S. 806, 813 (1996).  *See also United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 1997) ("The intent of the officer, actual or theoretical, is irrelevant to the determination of whether the traffic stop was valid."

7

Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th day of September, 2006.


_____/s/Charles S. Coody_____
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

8