**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Case No.: 2:06-cr-89-WKW-CSC |
| | ) | |
| **FREEMAN STEVENSON, JR.** | ) | |

**DEFENDANT'S OBJECTIONS TO RECOMMENDATION
OF MAGISTRATE JUDGE REGARDING MOTION TO SUPPRESS STOP,
SEARCH AND SEIZURE**

**COMES NOW**, the Defendant, Freeman Stevenson, Jr., by and through undersigned counsel, Anne E. Borelli and makes the following objections to the Recommendation of the Magistrate Judge filed in this matter on September 19, 2006 (D.E. 36).

1.     The Recommendation fails to assess the credibility of Officer Lance Gambrel, even though the officer's credibility was at issue and even though his testimony was contradicted by other testimony.

Officer Gambrel testified to the "articulable facts" supporting a reasonable suspicion as grounds for the stop of Mr. Stevenson's vehicle on September 15, 2005.[1] Officer Gambrel testified that light was sufficient, even at 7 p.m., to determine that the color of Mr. Stevenson's truck was "champagne" and that he could determine, as he drove past Mr. Stevenson's vehicle, that the driver was a tall, thin black male, approximately 40 years old.

---

[1] A transcript of the hearing was requested on September 18, 2006, but has not yet been provided. The facts cited in this pleading are given according to the best of counsel's recollection.

Officer Gambrel also testified that the truck had spinner rims and a bed cover and that all of these details matched the description of one of the suspects and vehicles involved in a burglary ten days earlier.

Officer Gambrel testified that Mr. Stevenson's truck was spotted at West Jeff Davis and Ewell Street. Officer Cedric Herbert testified that Mr. Stevenson's vehicle was spotted one block away, at the stop sign at Holt Street. (See Defendant's Exhibit 1.) Ewell Street is west of the I-65 overpass, while Holt Street is directly under the I-65 overpass, with significant areas of deep shadow. (See Defendant's Exhibit 4.) Officer Herbert also testified that Mr. Stevenson's truck had tinted windows.

What Officer Gambrel could see before he initiated the stop is crucial, because it is those facts only which can provide the "reasonable suspicion" to stop under *Terry v. Ohio*, 392 U.S. 1, 27 (1968). *See also United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993). Officer Gambrel's credibility is seriously impaired by several omissions and denials brought out by defense counsel. First, in composing his report of the incident, Officer Gambrel omitted the fact that a passenger was present in the vehicle at the time of the stop. (See Defendant's Exhibit 5.) Officer Gambrel admitted at the hearing that there was a passenger present. He claimed that his only reason for omitting that fact from his report was that he did not think it was "relevant." However, the officers stopped the truck in connection with a burglary in which more than one person participated. (See Government's Exhibit 1, p. 1; Government's Exhibit 2, p. 3.)

Officer Gambrel also omitted from his report that emergency medical responders were called to the scene. (See Defendant's Exhibit 5.) When questioned concerning this issue, Officer Gambrel did not acknowledge that there had been an emergency response. However, when presented with a report from the Montgomery Fire Department, he read into evidence facts confirming that there was an emergency response to the scene.[2]

Officer Gambrel failed to state in his report of the September 15th stop that he could and did observe the driver before the stop. The report gives a description of the truck, but not the driver. (Defendant's Exhibit 5, p. 1.) A description of the truck, absent a description of the driver and ten days after the report of the burglary, would not be sufficient to support reasonable suspicion that the persons in the vehicle were or had been engaged in criminal activity. *See, e.g., United States v. Hensley*, 469 U.S. 221, 226 (1985) (reasonable suspicion found where one officer personally knew the driver and observed him driving the vehicle and communicated those facts to other officers who later stopped the vehicle).

Officer Gambrel's selective omissions show little regard for completeness and accuracy. Officer Gambrel asserted, by his testimony, that he could recall, a year later, details he purportedly observed about Mr. Stevenson's appearance, yet he could not recall, or deliberately omitted, several significant aspects of the stop, such as the presence of a passenger and the call for emergency medical personnel.

---

[2]The report itself was excluded from evidence on the Government's objection to its relevancy. Defense counsel argued that the report was evidence going to the veracity of the witness, but the Court sustained the objection. There was no dispute as to the report's authenticity.

The Recommendation does not address the issue of Officer Gambrel's credibility, but simply notes that a "reviewing court must give due weight to the police officer's experience." (D.E. 36, p. 4 (*quoting United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991)).) A magistrate judge presiding at a suppression hearing is charged with assessing the credibility of witnesses. *See, e.g., United States v. Reed*, 2005 WL 3097888, at *1 (M.D. Ala. Nov. 18, 2005) (unreported). Officer Gambrel was not a credible witness.

2.    Defendant objects to the Recommendation's finding that the accuracy of the match between Mr. Stevenson and his vehicle with the vehicle and suspect involved in the burglary support a finding of reasonable suspicion. (D.E. 36, p. 4.) The Recommendation also fails to evaluate Officer Gambrel's testimony concerning his ability to observe the driver of the vehicle before he stopped it. (See id.)

The Recommendation accepts at face value Officer Gambrel's testimony that the truck was a "dead match" with the description given by the burglary witnesses. The burglary witnesses described a champagne colored Ford F150 with a bed cover and spinner rims. (See Government's Exhibit 1, p. 2; Government's Exhibit 2, p. 3.) The witnesses did not obtain the tag number of the truck. However, Thula Smith, one of the burglary witnesses, noted that one of the spinners was missing on the left front of the burglar's truck. (Government's Exhibit 1, p. 2.) On information and belief, testimony at the hearing established that Mr. Stevenson's truck was not missing a spinner.

The Recommendation discounts the variety of colors that might be described as

4

"champagne" (the word used by the witnesses) or "tan" (the word used by Officer Gambrel in his report, see Defendant's Exhibit 5, p. 1). (D.E. 36, p. 4, n. 4.) Officer Gambrel could not know that the color of the vehicle he stopped was a "dead match" until he stopped the vehicle and obtained further information to confirm his hunch. Officer Herbert's testimony that spinner rims are unusual because of their expense does not create a "unique" description either. (See D.E. 36, p. 2, n. 2.) Mr. Stevenson's truck did not match a distinctive feature described by eyewitness Thula Smith: the missing spinner rim. (Government's Exhibit 1, p. 2.)

The Recommendation also does not address the details of the driver's appearance that Officer Gambrel could have observed before stopping the vehicle. The Recommendation states that Officer Gambrel testified that he "had a clear view of the driver through the open driver's side window" as he passed Mr. Stevenson's vehicle. (D.E. 36, p. 2.) However, Officer Gambrel did not testify that the driver's side window was open as the two vehicles passed. Rather, he testified only that the window was down after the stop when he approached the driver's side. Officer Herbert testified that the truck had tinted windows and that he could not see what anyone inside the vehicle was doing as he approached it from the rear. Officer Gambrel asserted that he could see that the driver was a tall, thin black male in his forties in a few seconds' view through tinted windows on a darkened street. Even so, the two distinctive features in the burglary witnesses' description of the burglary suspect, the plaited hair and the nickname of "Poncho," were not either observed by or known to Officer

5

Gambrel before initiating the stop.

3.  The Recommendation fails to address the staleness of the information available to Officers Gambrel and Herbert on the day of the stop.

Officers Gambrel and Herbert participated in the investigation of a burglary that occurred ten days before the stop of Mr. Stevenson on September 15, 2005. The items taken in the burglary consisted primarily of large pieces of furniture. (See Government's Exhibit 3.)

Cases supporting the stop of a vehicle days after a reported crime focus on the details of the vehicle's description that definitively connect it to that crime or on the positive identification of the driver. In *United States v. Martin*, 636 F.2d 974, 976 (5th Cir. 1981), for example, police observed the same kind of orange rope used to bind a kidnapping victim tying down the trunk of the vehicle they stopped. In *United States v. Marxen*, 410 F.3d 326, 331 (6th Cir. 2005), police had at least a partial tag number, along with the description of the make and model of the car allegedly involved in a robbery. In *United States v. Hensley*, 469 U.S. 221, 226 (1985), police stopped a vehicle driven by a robbery suspect whom the initiating officer knew on sight.

In this case, stopping the truck, on the basis of its match to a description of a vehicle used in a burglary ten days earlier, without ensuring the identity of the driver, does not properly balance the interests of the individual and those of the government. *See, e.g., Dunaway v. New York*, 442 U.S. 200, 209 (1979) ("to determine the justification necessary

to make this specially limited intrusion [i.e., Terry stop] 'reasonable' under the Fourth Amendment, the Court balanced the limited violation of individual privacy involved against the opposing interests in crime prevention and detection and in the police officer's safety") (*citing Terry*, 392 U.S. at 22-27). Even if the truck was a close match to the description of the vehicle, the likelihood that the truck contained any evidence of the burglary ten days after the fact is slim, *cf., e.g., Marxen*, 410 F.3d at 331 ("the stop of his car could clearly lead to evidence that would permit the police to locate the robbers, and therefore protect the public from the threat the robbers posed"), especially where the main objects taken were large pieces of furniture.

    4.    The Recommendation fails to distinguish between asking a suspect for his name versus his nickname.

"To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 189 (2004). Officers making a *Terry* stop may "ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released." *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984). "[T]he limitation on 'scope' is not confined to the duration of the seizure; it also encompasses the manner in which the seizure is conducted." *Illinois v. Caballes*, 543 U.S. 405, 419 (2005).

The Recommendation equates asking Mr. Stevenson his street name with "determin[ing] the defendant's identity." (D.E. 36, p. 5.) The case cited in the Recommendation, *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, (2004) (see D.E. 36, p. 5), however, concerns whether a suspect can be compelled by law to provide police with his name when questioned. It does not decide the issue whether asking for a nickname is the same as asking for identification. Rather, the Court held in *Hiibel* that the defendant's Fifth Amendment rights were not violated by asking for his name, because "disclosure of his name presented no reasonable danger of incrimination." *Id.* at 189. The opposite is true here. Disclosure of Mr. Stevenson's nickname was sought expressly to incriminate him.

The Recommendation also discounts the coercive character of the encounter between Mr. Stevenson and the police. (D.E. 36, p. 6.) The proper inquiry for determining whether interrogation following a stop requires Miranda warnings is "whether [the stop] exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination." *McCarty*, 468 U.S. at 437. The circumstances which the Supreme Court has found to alleviate the pressures of a traffic stop seizure–"detention of a motorist pursuant to a traffic stop is presumptively temporary and brief," *McCarty*, 468 U.S. at 439–or a Terry stop–"nonthreatening character," *id.* at 441–were vitiated here. Here, Mr. Stevenson was provided with no explanation for the stop, despite his inquiries. He could not suppose that the stop would be short, because he had no indication of why he had been stopped.

8

**WHEREFORE,** based on the foregoing, Mr. Stevenson respectfully prays that any information or evidence gathered from the foregoing stop, search, and interrogation, including the firearm and his statement to the police, be suppressed.

Respectfully submitted,

s/ Anne E. Borelli
ANNE E. BORELLI
Counsel for Freeman Stevenson
Federal Defenders
201 Monroe Street, Suite 407
Montgomery, Alabama 36104
Phone: (334) 834-2099
Fax: (334) 834-0353
E-mail: anne_borelli@fd.org
AL Bar Code: BOR-016

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

>Todd Brown, Esquire
>Assistant United States Attorney
>One Court Square, Suite 201
>Montgomery, Alabama 36104

>Respectfully submitted,
>s/ Anne E. Borelli
>ANNE E. BORELLI
>Counsel for Freeman Stevenson
>Federal Defenders
>201 Monroe Street, Suite 407
>Montgomery, Alabama 36104
>Phone: (334) 834-2099
>Fax: (334) 834-0353
>E-mail: anne_borelli@fd.org
>AL Bar Code: BOR-016